CHARLES C. MACK and GYTHA T. MACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mack v. Commissioner
Docket Nos. 1102-77, 13797-78.
United States Tax Court
T.C. Memo 1980-401; 1980 Tax Ct. Memo LEXIS 181; 40 T.C.M. (CCH) 1286; T.C.M. (RIA) 80401; September 18, 1980, Filed Charles C. Mack, pro se. Patrick J. Gray, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes and an addition to tax under section 6651(a)(1): [1]/ Addition
Year
Deficiency
(sec. 6651(a)(1))
1971
$7,884.00
0
1972
8,134.64
0
1974
2,111.81
0
1975
1,071.24
$248.44
1976
1,617.00
0
*182 The issues for decision are: 1. Whether respondent correctly determined the date and amount of a charitable contribution by petitioners. 2. Whether respondent correctly disallowed a theft loss deduction in 1974 and consequent loss carrybacks to 1971 and 1972. 3. Whether petitioners are subject to the penalty under section 6651(a)(1) for late filing of their 1975 return. FINDINGS OF FACT Petitioners Charles C. Mack (petitioner) and Gytha T. Mack (Gytha), husband and wife, filed joint Federal income tax returns for 1971, 1972, and 1974 through 1976 with the Internal Revenue Service Center, Memphis, Tennessee. At the time the petitions were filed, petitioner was a legal resident of Florida and Gytha was a legal resident of North Carolina. Petitioner has held a number of jobs since the 1940's. Petitioner joined the U.S. Air Force in 1941. His positions included, among others, fighter pilot and communications officer. Petitioner continued his education while in the Air Force, ultimately receiving a Masters Degree and a Ph.D. in electrical engineering. After retiring from the Air Force in 1968, petitioner was employed by Philco Ford, Willow Grove, Pennsylvania, *183 and Superior Continental Corporation, Hickory, North Carolina. Following another brief retirement, petitioner received his MBA from Wake Forest University. Upon completion of the program, petitioner was hired to teach management classes at Ferris State College, Big Rapids, Michigan. Petitioner has been an electronics buff for over 50 years. He holds the highest class radio amateur license. In the late 1940's, petitioner began purchasing electronic equipment and component parts. The equipment included signal generators, radio receivers, oscilliscopes, voltmeters, tube checks, power supplies, and other miscellaneous pieces. The parts included resistors, capacitors, inductors, coils, chokes, transformers, switches, knobs, vacuum tubes, transistors, and bulbs. Petitioner hoped to eventually set up a technical laboratory to test electronic equipment. In part to further this goal, in 1959 petitioner purchased a cottage and 5 acres of land on Torch Lake in Kewadin, Michigan. During the late 1960's, petitioner began shipping his collection of equipment and parts to Elk Rapids, Michigan, which was located about 10 miles from his cottage on Torch Lake. Most of the equipment was *184 shipped by a moving van company. The remaining equipment was transported by petitioner and his two sons. Initially, petitioner stored the equipment in boxes in a garage in Elk Rapids owned by Frank Sobbry. When Sobbry sold his garage in 1973, the equipment was moved by Glenn Converse to petitioner's cottage. None of the equipment was insured against loss by theft. On April 23, 1974, a breaking and entering occurred at the Torch Lake cottage. The intruder entered and exited through a casement window located over the kitchen sink. Police arriving at the scene found the cottage door jammed and the kitchen window open. One officer entered and exited through the window because he was unable to open the door. Another officer entered through the window and forced the door open. A radio speaker, glass top from a cookie jar, and leather glove were found on or near a woodpile outside the window. The inside of the cottage was disheveled and a stuffed deerhead was lying on the floor, apparently torn apart in a search for hidden valuables. A number of other cottages in the area also were broken into that same night. Matching tire tracks were found at all of these cottages. No suspect, *185 however, was apprehended. Although petitioner claims that a large amount of equipment was stolen from his cottage, he did not furnish a list of the stolen equipment to the police. In June 1974, petitioner donated most of the equipment remaining in his cottage to the Elk Rapids School District. The equipment was appraised by two teachers with no background in electronics using a catalog of prices for new equipment. An additional small amount of equipment was subsequently donated by petitioner. On his income tax return for 1974, petitioner claimed a theft deduction in the amount of $93,600. Petitioner then claimed net operating carryback deductions on his amended income tax returns for 1971 and 1972. He also claimed charitable contribution deductions of electrical equipment in the amounts of $5,342.42 and $9,104 for 1975 and 1976, respectively. A copy of petitioner's 1975 income tax return, bearing the original mailing sticker furnished by the Internal Revenue Service and the original W-2 forms marked "to be filed with employee's FEDERAL tax return," was stamped received by the Internal Revenue Service on January 3, 1977. In his notice of deficiency, respondent disallowed *186 the charitable contributions and the theft loss and resulting carryback because of lack of substantiation. Respondent also determined an addition to tax under section 6651(a) for the late filing of petitioners' 1975 return. Petitioner now claims that he is entitled to a theft loss of $108,728 for 1974, and charitable contribution deductions of $28,218.42 and $24,416.71 for 1975 and 1976, respectively. Respondent has conceded a charitable contribution deduction in the amount of $2,770.27 for 1974. OPINION 1. Charitable Contribution
The first issues to be decided, both purely factual, are the timing and amount of petitioner's contribution of electrical equipment and parts to the Elk Rapids School System. We agree with respondent that the proper year for the charitable contribution deduction is 1974. The transfer was made in June of that year. Although we recognize that there are ambiguities and possible inconsistencies in the testimony, we find that petitioner did not restrict the use of the property, nor, contrary to petitioner's claim, did he reserve the right to repossess any donated equipment. The weight of the credible testimony shows that, while petitioner *187 reserved the right to keep any of the equipment he had on hand when the gift was arranged, he did not reserve the right to retake any equipment once it had been transferred to the school officials in June 1974. It is true that petitioner also gave a small amount of equipment to the school after June 1974. Petitioner has failed, however, to show that this contribution occurred in a year other than 1974. On his income tax returns, petitioner claimed charitable contributions deductions in the amounts of $5,342.42 for 1975 and $9,104 for 1976, but now claims deductions of $28,218.42 for 1975 and $24,428.71 for 1976. Although petitioner is highly qualified in electronics, the value of the equipment and parts upon which he based his deduction in his return was the value assigned to the equipment and parts by two high school teachers who had no background in electronics. In arriving at the assigned value, the teachers used an electronics catalog reflecting prices for new equipment. Clearly, this method overstated the actual value of the donated equipment because much of it was used, had a limited marketability, was no longer under warranty, or had become obsolete. Some of the equipment *188 dated back to the 1940's, and the teachers' valuation method gave no weight to the recent developments in electronics during the intervening period. We think, however, that the estimate of value ($2,770.27) prepared by respondent's expert does not accurately reflect the value of the donated equipment. After the donation to the school district was made, the equipment was moved from place to place. No special precautions were taken during moving and storage to protect the equipment from damage. Further, in the 5 years between the contribution and the expert's valuation, some of the equipment had been appropriated by individuals for their private use. It is most likely that the purloined equipment was that equipment which was in the best condition and was the most valuable. Moreover, the expert conceded that he was unable to evaluate an "appreciable amount" of the equipment. To accept the value claimed by either party would cause an injustice. Therefore, using our best judgment in the light of all the evidence, we find that the value of the equipment and parts at the time of contribution was $7,000. Accordingly, we hold that petitioner made a charitable contribution in that *189 amount in 1974. 2. Theft Loss
Section 165 provides for the deduction of an uncompensated loss from theft during the taxable years in which the taxpayer discovers the loss. Section 1.165-8(c), Income Tax Regs., further provides: In the case of a loss sustained after December 31, 1963, in a taxable year ending after such date, in respect of property not used in a trade or business or for income producing purposes, the amount deductible shall be limited to that portion of the loss which is in excess of $100. Petitioner has shown that his cottage was entered by one or more intruders on April 23, 1974, and that a radio speaker, cookie jar top, and leather glove were found outside the cottage beneath an open window. Nevertheless, we are not convinced that he suffered a substantial theft loss. First, we think the volume and value of the electronic equipment stored in petitioner's summer cottage have been grossly exaggerated by some of the testimony. There is testimony that petitioner had stored in his cottage some 200 boxes of electronic equipment. Petitioner has estimated the value of this equipment at various amounts, e.g., $1,000,000 (in his brief), $350,000 (in his *190 petition), and $93,600 (in his 1974 income tax return). We think it incredible that petitioner would have stored, uninsured, equipment of such value first in a friend's garage and then in a summer cottage, located in a community of other summer homes where break-ins and thefts occurred frequently during the winter and spring seasons, without taking special precautions against loss. There is no evidence of any such special precautions. [2]/ Furthermore, although the police requested a list of the missing equipment, petitioner failed to furnish one. Nor is there any evidence of any effort to trace any pilfered property. Had equipment of such quantity and value been stolen, we think petitioner would have furnished to the police a description of the equipment as complete as possible and would have insisted on an area-wide investigation to attempt to trace its disposition by the thief. Additionally, on the same *191 night that petitioner's property was entered, successful or attempted break-ins occurred at several neighboring properties. Tire tracks from the same vehicle were found at all of the properties. Moreover, as stated in our Findings, a stuffed deerhead in petitioner's cottage had been torn apart apparently in a search for hidden valuables. We think these facts indicate that the intruders were looking for items less bulky and more easily convertible into cash than petitioner's electronic equipment. Finally, the testimony of the police officers investigating the break-in shows that the intruder did not open the cottage door but rather entered and left the house through an 18-by-36-inch casement window. Accordingly, to enter the cottage the intruder would have been required to climb up a woodpile, squeeze through the window, step into the sink, and then step down to the floor. The intruder would have to reverse this process in order to leave the cottage. The physical difficulty of removing large boxes of equipment in this manner is apparent. We think it unlikely that the intruder, who did not use the door, removed equipment with much value from the cottage. Although we recognize *192 that the conclusion we have reached is in conflict with some of the testimony, we simply are not satisfied that any substantial quantity of electronic equipment or paraphernalia was removed from petitioner's cottage on April 23, 1974. [3]/ It is true that the police report shows that a radio speaker, apparently from petitioner's electronic collection, the glass top from a cookie jar, and a leather work glove were found on or near the woodpile under the window. Thus, while it is possible that some items were taken from petitioner's cottage, there is no evidence in the record from which we can estimate their value. Accordingly, we are compelled by a careful analysis of the evidence to hold that petitioner has not established a deductible theft loss in 1974. 3. Section 6651(a) Addition to Tax
Petitioner also claims that respondent erred in determining an addition to tax under section 6651(a) for 1975. Petitioner asserts that the Form 1040 marked *193 by the Internal Revenue Service as the original income tax return for that year is actually an amended copy of the original which was mailed prior to April 15, 1976. Contrary to petitioner's position, we think the return stamped "received" on January 3, 1977, was the original return The mailing label used on the return was the original label provided by the Internal Revenue Service along with the filing instructions. Further, the W-2 copies accompanying the return were those marked "to be filed with employee's FEDERAL tax return." It is likely that petitioner would have used both the mailing label and the employee's Form W-2 in preparing and filing his original return. Because petitioner has introduced no substantial evidence to corroborate his testimony that he filed a timely return, we must sustain respondent's determination on this issue. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years at issue, unless otherwise noted.
2. /↩ It is true that petitioner hired a local resident to assist petitioner in renting the cottage. Nevertheless, the evidence does not indicate that this individual was hired to protect the property against theft or that he took any special steps to do so.
3. /↩ There is some vague testimony in the record concerning the possibility of a second break-in shortly thereafter. The police, however, were not notified of a subsequent break-in and we do not believe that it occurred.